FILED

NOV – 9 2022

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **4:22CR620 SEP/SPM** |
| | ) | |
| JEANNINE R. BUFORD, | ) | |
| | ) | |
| Defendant. | ) | |

**INDICTMENT**

The Grand Jury charges that:

**INTRODUCTION**

At all times material to this Indictment, unless otherwise specified below:

1.     Defendant **JEANNINE R. BUFORD** resided in St. Louis, Missouri, within the Eastern District of Missouri.

2.     PORSHIA L. THOMAS resided in St. Louis, Missouri, within the Eastern District of Missouri.

3.     Couture Trading Incorporated was an entity created by Defendant **JEANNINE R. BUFORD**. Despite being registered as a corporate entity by Defendant **JEANNINE R. BUFORD**, Couture Trading never generated revenue or paid employees.

4.     First Home Bank, Wells Fargo Bank, N.A., and Neighbors Credit Union were financial institutions within the meaning of Title 18, United States Code, Sections 20 and 1344, the deposits of which were insured by the Federal Deposit Insurance Corporation.

5.     Fundera Inc., headquartered at 123 William Street, New York, New York, 10038, served as a referral agent for Couture Trading's fraudulent Paycheck Protection Program loan

1

application to First Home Bank. Acting as a referral agent, Fundera accepted Paycheck Protection Program loan applications, and subsequently provided those applications to qualifying Paycheck Protection Program lenders in exchange for payments from the participating lenders.

## THE PAYCHECK PROTECTION PROGRAM

6.     The United States Small Business Administration ("SBA") is an executive-branch agency of the United States government that provides support to entrepreneurs and small businesses. The mission of the SBA is to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in economic recovery after disasters.

7.     The Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136,134 Stat. 281 (2020), was a federal law that was enacted in or around March 2020 to provide emergency financial assistance to the millions of Americans suffering the economic impact caused by the COVID-19 pandemic. One source of relief provided for in the CARES Act is the authorization of forgivable loans to small businesses for job retention and certain other expenses, through the Paycheck Protection Program ("PPP"). The purpose of loans issued under the PPP was to enable small businesses suffering from the economic downturn to continue to pay salary or wages to their employees.

8.     To obtain a PPP loan, a qualifying business was required to submit a PPP loan application, signed by an authorized representative of the business. The PPP loan application required the business to acknowledge the program rules and make certain affirmative certifications to obtain the PPP loan.  In the PPP loan application, the small business (through its authorized representative) was required to certify: (a) that the small business was in operation on February 15, 2020; (b) the average monthly payroll expenses; and (c) the number of employees. These

certifications were used to calculate the amount of money that the small business was eligible to receive under the PPP.

9.      A PPP loan application was then processed by a participating lender. If a PPP loan application was approved, the participating lender funded the loan using its own monies, which were then guaranteed by the SBA.  Generally, in the event that the borrower defaulted on a PPP loan, the SBA would purchase the borrower's debt from the lending financial institution.

10.     PPP loan funds were required to be used on certain permissible expenses, including payroll costs, mortgage interest, rent, and utilities for the business. In the PPP loan application, the borrower had to certify that "[a]ll SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule." In that same application, the borrower also had to certify that "[t]he funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule."

**COUNT 1**
**(Wire Fraud Conspiracy: 18 U.S.C. § 1349)**

11.     Paragraphs 1–10 are realleged and incorporated by reference as if fully set forth herein.

12.     Beginning in or about March 2020, and continuing through at least in or about May 2021, in the Eastern District of Missouri and elsewhere, the defendant,

**JEANNINE R. BUFORD**,

intentionally combined, conspired, confederated, and agreed with PORSHIA L. THOMAS and others known and unknown to the Grand Jury, to commit the following offense against the United States:

3

(a)     Having devised and intended to devise a scheme and artifice to defraud and obtain money and property by means of materially false and fraudulent pretenses and representations and for the purpose of executing such scheme, and attempting to do so, did knowingly cause and attempt to cause to be transmitted by means of wire communication in interstate commerce, writings, signs, and signals in the form of interstate electronic communications, all in violation of Title 18, United States Code, Sections 1343 and 1349.

**MANNER AND MEANS OF THE SCHEME AND CONSPIRACY**

13.     The primary purpose of the scheme and artifice to defraud and obtain money by means of materially false and fraudulent pretenses, representations, and promises and the conspiracy to commit wire fraud was for Defendant **JEANNINE R. BUFORD** and PORSHIA L. THOMAS to obtain fraudulent PPP loans from lending institutions by means of false and fraudulent representations.

14.     The scheme and artifice to defraud and obtain money and property by means of materially false and fraudulent pretenses, representations, and promises and the conspiracy to commit wire fraud were carried out by **BUFORD**, THOMAS, and others known and unknown to the Grand Jury in the following manner:

**PREPARATIONS TO DEFRAUD PPP LENDERS**

15.     On or about March 29, 2020—after passage of the CARES Act—**BUFORD** texted THOMAS the following: "I'm tired of struggling it's time to put the ski mask on I'm about to get bold as f\*\*k! Especially while nobody's paying attention lol Due to corona[.]"

16.     On or about April 7, 2020, **BUFORD** filed Articles of Amendment with the Montana Secretary of State's Office. In the Articles of Amendment, **BUFORD** changed the name

4

of a pre-existing company called Bulgaria Associates Inc. to Couture Trading Inc. At no point in time did **BUFORD** have any physical presence in Montana, nor did she ever conduct any business operations in Montana. In addition to changing the corporate entity's name in the Articles of Amendment, **BUFORD** listed the "physical address" for Couture Trading as "9107 Wilshire Blvd, Unit 450, Beverly Hills, California 90210[.]" In that same document filed with the Montana Secretary of State's Office, **BUFORD** listed herself as the President of Couture Trading, and she reported that THOMAS was the company's Director, Vice President, Secretary, and Treasurer.

17.     On or about April 30, 2020, THOMAS applied for a certificate of authority from the Missouri Secretary of State's Office for Couture Trading to operate as a foreign, for-profit corporation. In her application, THOMAS listed herself as the President and Director of Couture Trading, and THOMAS listed **BUFORD** as the Vice President.

18.     On or about May 8, 2020, **BUFORD** texted THOMAS the following message: "I'm telling you my friend just got a good amount on her PPP with those forms they gone audit me I owe them money and had a case if I come with high numbers I got to play it safe[.]"

19.     On or about June 18, 2020, **BUFORD** texted THOMAS the following message: "Girl please get on the ppp loan for couture trading . . ."

20.     Discussing their plans to submit a fraudulent PPP loan application for Couture Trading to First Home Bank (which is headquartered in Florida), **BUFORD** and THOMAS had the following conversation on or about July 8, 2020:

> **BUFORD**:     So we rolling with the Florida bank because they pay out hella fast
>
> THOMAS:     Hell yeah florida the truth
>
> **BUFORD**:     Ok perfect by the end of the month we gone have 6 figures in our bank trust

**THE FRAUDULENT PPP LOAN APPLICATION TO FIRST HOME BANK**

21.     On or about July 15, 2020, in the Eastern District of Missouri, THOMAS—with the assistance of **BUFORD**—completed a fraudulent PPP loan application for Couture Trading. On or about that same date, THOMAS submitted the PPP loan application for Couture Trading to Fundera Inc., which served as a referral agent for First Home Bank. THOMAS submitted the fraudulent Couture Trading PPP application electronically via interstate wire communication. After THOMAS' initial submission, Fundera subsequently provided the fraudulent Couture Trading PPP loan application, along with the supporting documents, to First Home Bank, the loan processor and lender for the fraudulent PPP loan.

22.     Completing the fraudulent PPP loan application together, THOMAS and **BUFORD** knowingly made and caused to be made numerous materially false and fraudulent representations. Among other things, the fraudulent Couture Trading PPP loan application contained the following materially false and fraudulent representations:

a.      That Couture Trading had a business address of 9107 Wilshire Blvd., Suite 450, Beverly Hills, CA, 90210. THOMAS and **BUFORD** knew that this was false, and that in truth and fact, Couture Trading did not conduct any business operations at 9107 Wilshire Blvd., Suite 450, Beverly Hills, CA, 90210.

b.      That the number of employees of Couture Trading was 15. THOMAS and **BUFORD** knew that this was false, and that—in truth and fact—Couture Trading never paid any employees.

c.      That Couture Trading had an average monthly payroll of $120,000.00. THOMAS and **BUFORD** knew that this was false, and that—in truth and fact—Couture Trading never made any payroll payments.

6

d.      That Couture Trading was "in operation on February 15, 2020[,] and had employees for whom it paid salaries and payroll taxes." THOMAS and **BUFORD** knew that this was false, and that—in truth and fact—Couture Trading was not in operation on February 15, 2020, and Couture Trading did not pay payroll taxes for any employees.

e.      That "[t]he funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule." THOMAS and **BUFORD** knew that this was false, and that—in truth and fact—THOMAS and **BUFORD** intended to spend the loan proceeds on luxury apartments, foreign cars, and expensive furniture.

f.      That the "[p]urpose of the loan" was to assist Couture Trading with the following:

☒ Payroll      ☐ Lease / Mortgage Interest      ☒ Utilities      ☒ Other (explain):   <u>Debt interest, Rent,</u>

THOMAS and **BUFORD** knew that this was false, and that—in truth and fact—THOMAS and **BUFORD** intended to spend the loan proceeds on luxury apartments, foreign cars, and expensive furniture.

23.     In support of the fraudulent Couture Trading PPP loan application, THOMAS and **BUFORD** worked together to create and submit several fraudulent documents. Among other documents, THOMAS submitted several bank statements, which were listed as belonging to "Couture Trading Inc." at Wells Fargo, with an account number ending in 549. THOMAS and **BUFORD** knew that the information in these documents was false, and that in truth and fact, Couture Trading did not have a Wells Fargo bank account.

24.     In a discussion about creating the fraudulent and fictitious Couture Trading bank statements, THOMAS and **BUFORD** had the following conversation on or about July 12, 2020:

7

THOMAS:  So i get a email from florida bank they want 6 months of business bank statement . . .

. . .

**BUFORD**:  Well they didn't say no[.] We got to come up with it

THOMAS:  Girl i dont feel like makking all that shit i got too much other shit to do

**BUFORD**:  I know make the bank statements simple just a few deposits[.] I have had to do it before . . . Pdffiller.com you can overwrite the Wells Fargo ones your have

## COMMUNICATIONS IN FURTHERANCE OF THE SCHEME AND CONSPIRACY

25.   While waiting for First Home Bank's response to Couture Trading's fraudulent PPP loan application, **BUFORD** texted THOMAS the following on or about August, 10, 2020: "I'm down to $500 in my bank account sadly . . . Where the f**k is the Florida bank call they a** today . . ."

26.   On or about August 11, 2020, **BUFORD** and THOMAS had the following conversation:

**BUFORD**:  What did the Florida bank day yesterday. Let's contact them again today we have to be on they a** I want to make sure they don't try to ask for more paperwork and catch us slipping before any deadlines. I'm going to check if they extended the dates . . .

THOMAS:  They said they r waiting on underwriting

**BUFORD**:  Oh god that sucks!!!!!

27.     On or about August 12, 2020, **BUFORD** texted THOMAS the following message: "PPP PLEASE COME THROUGH WE ARE IN NEED OF A PPP PARTY!"

28.     On or about August 16, 2020, **BUFORD** texted THOMAS the following message: "Let's pray our loan comes through this week I'm literally down to $600 this is bullshit . . ."

29.     On or about August 17, 2020, **BUFORD** and THOMAS had the following conversation:

> **BUFORD**:     Top of the afternoon if you get a chance today see what the Florida Bank is on smh 🔔
>
> THOMAS:        Hey happy monday!
>
> **BUFORD**:     Hey 🐢
>
> THOMAS:        Yes i called them someone is going to call me back today...they keep teling me to email but the email doesnt work
>
> **BUFORD**:     They on some straight bullshit . . .
>
> THOMAS:        The ppp lady called me . . . She saying they might or might not need a certificate of good standing for California . . . I told her we have multiple addresses but we work out of missouri . . . She said she is going to check with her supervisor
>
> **BUFORD**:     Omg that's exactly why I want you to call there everyday until we close on this loan because underwriting is on some straight bullshit I'm so glad you called

30.     On or about August 19, 2020, **BUFORD** sent THOMAS the following message: "My job has hardly no hours and unemployment is all fucked up they need to hurry up with back pay and hopefully this loan pays out soon I'm so broke[.]"

9

31.    On or about August 25, 2020, **BUFORD** sent THOMAS the following voice message: "Hello, Earth to Porshia. Hey let me know if you were able to get ahold of the Florida Bank today. I want to know what the loan status is. I'm so tired of this. I just want it to go through so we can have our PPP party."

32.    On or about August 27, 2020, **BUFORD** and THOMAS had the following conversation:

THOMAS:    300k we need i know this b**ch stephanie at the florida bank is young and dumb all she gotta do is press a button . . . I need a fuckinng car! . . .

**BUFORD**:    Right! Come one Stephanie press the dam button

## OBTAINING THE PPP LOAN BASED ON MATERIAL MISREPRESENTATIONS

33.    On or about September 3, 2020, in the Eastern District of Missouri, THOMAS—with the assistance of **BUFORD**—completed a "Borrower's Certification" form for Couture Trading's fraudulent PPP loan application. On or about that same date, THOMAS provided to First Home Bank the Borrower's Certification form. The Borrower's Certification form, according to its own terms, was completed in order to "induce FIRST HOME BANK ('Lender') to make a U. S. Small Business Administration ('SBA') guaranteed Loan . . . to Couture Trading." Among other things, the fraudulent Borrower's Certification form contained the following materially false and fraudulent representations:

a.    "All other certifications set forth in the Paycheck Protection Program Borrower Application Form, SBA Form 2483, as submitted by [Couture Trading] to [FIRST HOME BANK] are incorporated herein by reference, are true and correct, and are hereby reaffirmed to [FIRST HOME BANK]."

10

b.    "All documents submitted to [FIRST HOME BANK], including without limitation, payroll processor records, payroll tax filings, Form 1099-MISC, or bank records, are true and correct."

34.    On or about September 8, 2020, based on the material misrepresentations made in the fraudulent Couture Trading PPP loan application, First Home Bank disbursed approximately $291,600 in PPP loan proceeds to Couture Trading. Those funds were wired via interstate wire transfer from First Home Bank into an account controlled by THOMAS.

**DEFENDANT BUFORD'S USE OF PPP FUNDS FOR UNAUTHORIZED PURPOSES**

35.    On the same day that First Home Bank disbursed the Couture Trading PPP loan—still on or about September 8, 2020—**BUFORD** and THOMAS had the following conversation:

THOMAS:    Girl i just checked again the money is there !!!!!!!!
😜😜😜😜😜😜😜

**BUFORD**:    Yes!!!!!

THOMAS:    Ayyee

**BUFORD**:    Praise God!! . . . PPP PARTY 🎉 . . .

**BUFORD**:    One Cardinal way here we come I guess I will apply online I can't go there until my feet feel better

36.    Once THOMAS obtained the proceeds of the fraudulent PPP loan issued to Couture Trading, she knowingly spent those proceeds on numerous items that she knew were not authorized under the PPP. Among other things, on the same day that THOMAS received the PPP loan (on or about September 8, 2020), THOMAS wired $10,000 to **BUFORD'S** TransferWise account. In addition, THOMAS wrote a $65,000 check to **BUFORD**. **BUFORD** deposited that check into a

Neighbors Credit Union account that she controlled (account number ending in 960) on or about September 10, 2020.

37.     **BUFORD** knowingly spent the PPP loan proceeds that she received on numerous items that she knew were not authorized under the PPP. Among other things, **BUFORD** made the following payments with PPP loan proceeds:

a.     On or about September 21, 2020, **BUFORD** paid $14,000 out of a Neighbors Credit Union account that she controlled (account number ending in 960) as a down payment on a 2017 BMW X6 (VIN: 5UXKU2C3XH0U29459).

b.     On or about September 22, 2020, **BUFORD** paid $1,855.98 out of a Neighbors Credit Union account that she controlled (account number ending in 960) to rent a luxury apartment at 1 Cardinal Way, St. Louis, MO 63102.

c.     On or about September 26, 2020, **BUFORD** paid $4,955.20 out of her Neighbors Credit Union (account number ending in 757) to purchase a couch from Rove Concepts.

d.     Between on or about September 8, 2020, and February 11, 2021, **BUFORD** spent the remaining amount of PPP proceeds that she received on personal items, including on furniture, car expenses, food, and clothes.

38.     **BUFORD**, THOMAS, and others known and unknown to the Grand Jury undertook the aforementioned actions to execute the scheme and artifice to defraud and obtain money and property by means of materially false and fraudulent pretenses, representations, and promises and the conspiracy to commit wire fraud, all in violation of 18 U.S.C. § 1349.

### COUNT 2
### (Wire Fraud (18 U.S.C. §§ 1343 & 2))

39.     Paragraphs 1 through 38 are realleged and incorporated by reference as if fully set forth herein.

40.    On or about July 15, 2020, within the Eastern District of Missouri, and elsewhere, for the purpose of executing the above-described scheme and artifice to defraud and obtain money and property by means of false and fraudulent pretenses, representations and promises and for the purpose of executing the same,

**JEANNINE R. BUFORD,**

the defendant herein, did knowingly transmit and cause to be transmitted by means of wire communication in and affecting interstate commerce, certain writings, signs, signals, pictures, or sounds, including an electronic PPP loan application for Couture Trading that PORSHIA L. THOMAS submitted through an out-of-state server.

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS 3–4
### (Money Laundering (18 U.S.C. §§ 1957 & 2))

41.    Paragraphs 1 through 40 are realleged and incorporated by reference as if fully set forth herein.

42.    On or about the dates set forth below, in the Eastern District of Missouri, the defendant,

**JEANNINE R. BUFORD**,

did knowingly engage and attempt to engage in monetary transactions by, through or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is the transfer of funds, such property having been derived from a specified unlawful activity, to wit, wire fraud, in violation of 18 U.S.C. § 1343, as follows:

| Count | Approx. Date | Transaction |
|-------|--------------|-------------|
| 3 | September 10, 2020 | Deposit of $65,000.00 check drawn on Wells Fargo account (account number ending in 549) into a Neighbors Credit Union account controlled by **BUFORD** (account number ending in 960) |

| 4 | September 21, 2020 | **BUFORD** paid $14,000 out of a Neighbors Credit Union account that she controlled (account number ending in 960) as a down payment on a 2017 BMW X6 (VIN: 5UXKU2C3XH0U29459). |
|---|---|---|

All in violation of Title 18, United States Code, Sections 1957 and 2.

### FORFEITURE ALLEGATION

The Grand Jury further alleges there is probable cause that:

1.      Pursuant to Title 18, United States Code, Sections 981 and 982(a)(1) and Title 28, United States Code, Section 2461, upon conviction of an offense in violation of Title 18, United States Code, Sections 1343, 1349 and 1957, Defendant **JEANNINE R. BUFORD** shall forfeit to the United States of America any property, real or personal, which constitutes or is derived from proceeds traceable to such violation or any property involved in such violation. Subject to forfeiture is a sum of money equal to the amount of $85,943.48 or to the total value of any property, real or personal, which constitutes or is derived from proceeds traceable to such violations.

2.      Pursuant to Title 18, United States Code, Sections 982(a)(2), upon conviction of an offense in violation of Title 18, United States Code, Sections 1343 and 1349 as set forth in Counts 1 and 2, Defendant **JEANNINE R. BUFORD** shall forfeit to the United States of America any property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of such violation.  Subject to forfeiture is a sum of money equal to the total value of any property, real or personal, constituting or derived from any proceeds traceable to such violation.

3.      Pursuant to Title 18, United States Code, Sections 982(a), upon conviction of an offense in violation of Title 18, United States Code, Section 1957, as set forth in Counts 3-4, the Defendants shall forfeit to the United States of America any property, real or personal, involved in such offense, and any property traceable to such property. Subject to forfeiture is a sum of

14

money equal to the total value of any property, real or personal, involved in such offense, or any property traceable to such property.

      4.      Specific property subject to forfeiture includes, but is not limited to, the following:

           a.   A 2017 BMW X6 (VIN: 5UXKU2C3XH0U29459).

      5.      If any of the property described above, as a result of any act or omission of the Defendants:

           a.      cannot be located upon the exercise of due diligence;

           b.      has been transferred or sold to, or deposited with, a third party;

           c.      has been placed beyond the jurisdiction of the court;

           d.      has been substantially diminished in value; or

           e.      has been commingled with other property which cannot be divided without difficulty,

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

                           A TRUE BILL.

                           _____

                           FOREPERSON

SAYLER A. FLEMING
United States Attorney

_____
DEREK J. WISEMAN, #67257MO
Assistant United States Attorney

15